J. R. GRAHAM AND SON, INC. v. THE RANDOLPH COUNTY BOARD OF EDUCATION

No. 7419SC1017

(Filed 19 March 1975)

1. **Contracts § 16; Damages § 7— construction project — time of completion — delay by defendant — no liquidated damages**

    In this action arising out of a contract between the parties for the construction of a high school where the evidence tended to show that defendant ignored plaintiff contractor's request for a 60-day extension of time for completion of construction, plaintiff had every reason to expect that additional requests would be futile, defendant was well aware of the difficulties being encountered at the job site, and defendant executed a change order for the remainder of the contract price more than one month after the 300-day construction period elapsed, defendant clearly had waived any expectation of adherence to the original contract schedule, plaintiff was not required to submit further requests for extension of time, and defendant was not entitled to withhold liquidated damages.

2. **Architects; Contracts § 16— failure to pay contractor's estimates — delay by architect — right of contractor to interest on late payments**

    In an action arising out of a contract between the parties for the construction of a high school where the evidence tended to show that plaintiff submitted valid estimates and failure to approve them was an intentional delay on the part of the architect for the reason that defendant did not have the funds available to pay plaintiff on the

estimates, the trial court properly awarded plaintiff interest on the late payments.

**3. Contracts § 18— oral instruction from architect to contractor — modification of contract**

Where the architect instructed plaintiff contractor to do additional work not called for in the parties' contract, this constituted oral modification of the contract for which plaintiff was entitled to recover without having first requested additional sums through written change order.

**4. Contracts § 18— oral agreement ancillary to original contract — enforceable modification**

Where the contract and change order were submitted for plaintiff contractor's signature and plaintiff and the architect entered into an oral agreement which was ancillary to the original contract, this parol modification of the contract was enforceable, and plaintiff was entitled to recover on the agreement.

**5. Architects; Contracts § 21— defective specifications for roof — architect's instruction to follow specifications — leaking roof — no liability of contractor**

In an action arising out of a contract between the parties for the construction of a high school, the trial court properly denied defendant recovery on its counterclaim for roof repairs under plaintiff's two year contractual guarantee where plaintiff offered evidence tending to show that when the roof was being constructed the roofing subcontractor pointed out to the architect that the specifications were defective and the roof would leak if they were followed exactly, the architect ordered the subcontractor to follow the specifications, and the roof leaked.

APPEAL by defendant from *Godwin, Judge.* Judgment entered 28 June 1974 in Superior Court, RANDOLPH County. Heard in the Court of Appeals 18 February 1975.

This is a civil action arising out of a contract between the parties for the construction of a high school in Randolph County. In 1967 the Randolph County School Board decided to replace the existing Trinity High School. J. Hyatt Hammond was employed as architect. In September 1967 the Board awarded four prime contracts for the construction of five buildings. One of these went to J. R. Graham and Son, Inc., as general contractor on its bid of $514,672: the actual contract amount was to be $339,672, with a letter of the Board's intent to extend the sum by $175,000 when funds became available for the 1968-69 fiscal year.

Plaintiff's president, J. R. Graham, testified that on 10 October 1967 he received from Hammond a copy of the written

contract, executed by defendant Board and accompanied by a change order (GC #1) for $60,000.00 in cost reductions authorized by the architect. Graham objected to some of these reductions but signed the contract at Hammond's urging and on his assurance that adjustments would be made.

Graham started construction on the project, and there were problems from the outset. The architect repeatedly withheld certification on Graham's applications for monthly payments. On 19 February 1968, Graham requested a 60-day extension of time for performance on account of inclement weather and difficulties with the roof, but the architect did not respond. Work on the project continued.

On 12 September 1969, the Board issued a change order (GC #4) increasing the contract price by $175,000 pursuant to the letter of intent. A final inspection was held on 21 January 1969, 469 days after construction began. Final payment was not made until 21 July 1969. The contract provided that the school was to be completed 300 days after construction was begun, and for every day over 300 the sum of $100.00 was to be deducted from the price as liquidated damages. Defendant withheld $16,900.00 in liquidated damages. Plaintiff brought suit and defendant counterclaimed for expenses incurred in repairing a leaking roof.

The trial court made findings of fact and awarded plaintiff interest on late payments; liquidated damages withheld in the amount of $16,900.00, plus interest; the cost of extra work done at the architect's request, plus interest; and cost reductions to which plaintiff objected when the contract was signed. The court denied defendant's counterclaim. From judgment entered, defendant appealed to this Court. Additional facts necessary to a disposition of the case will be set out in the opinion.

*Schoch, Schoch, Schoch and Schoch, by Arch K. Schoch, for plaintiff appellee.*

*Miller, Beck, O'Briant and Glass, by G. E. Miller, for defendant appellant.*

ARNOLD, Judge.

Defendant contends that the contract documents, including the standard AIA contract, preclude plaintiff's recovering the relief granted by the trial court. Upon a voluminous record, the

court made detailed findings of fact. It is for this Court to inquire whether these findings are supported by the evidence and whether they support the conclusions of law.

The North Carolina Supreme Court has said:

> "Obviously, as an elementary general proposition, a contractor is not liable under a clause for liquidated damages based on a time limit if his failure to complete the contract within the specified time was wholly due to the act or omission of the other party in delaying the work; whether by omitting to provide the faculties [sic] or conditions contemplated in the contract to be provided by him, or by those for whom he is responsible, or by interfering with the work after the contractor has begun, or otherwise. *Dunavant v. R. R.*, 122 N.C. 999, 29 S.E. 837; *United States v. United Engineering & Contracting Co.*, 234 U.S. 236, 58 L.ed. 1294; Anno. 152 A.L.R., p. 1350; 22 Am. Jur., 2d, Damages, § 233; 25 C.J.S., Damages,. p. 1096. The concept of justice back of the decisions appears to be that the other party should not be allowed to recover damages for what he himself has caused."

*Reynolds Co. v. Highway Commission*, 271 N.C. 40, 50, 155 S.E. 2d 473, 482 (1967). *See also* Annot. 152 A.L.R. 1349 (1944).; 5 A. Corbin, Contracts, § 1072 (1964).

[1] Plaintiff's evidence tended to show and the trial court found that the delay in completing the project was caused by defendant's failure to pay plaintiff on time, defendant's failure to provide water for and a road to the job site, the failure of the heating contractor employed by defendant to install the heating system on time, and bad weather. The court further found that delay was caused by the "ineptness of the architect, Hammond, and his lack of cooperation with Graham and the other contractors." Defendant nevertheless contends that plaintiff's failure to request an extension of time under the terms of the contract constitutes a waiver of grounds for delay. While defendant's position is generally tenable, *see e.g., Austin-Griffith, Inc. v. Goldberg*, 224 S.C. 372, 79 S.E. 2d 447 (1953), we believe the facts belie the reasoning behind it. The record shows that when plaintiff on 19 February 1968 requested a 60-day extension, it was ignored. Plaintiff had every reason to expect that additional requests would be futile. Defendant was well aware of the difficulties being encountered at the job site. Moreover,

Graham and Son, Inc. v. Board of Education

defendant did not execute the change order. for the remainder of the contract price until 12 September 1968, more than a month after the 300-day construction period elapsed. Defendant clearly had waived any expectation of adherence to the original contract schedule. On the basis of these facts, plaintiff was not required to submit further requests for extension of time and defendant was not entitled to withhold liquidated damages.

[2]  As a general rule, when the contract so provides, the architect's certification is a condition precedent to the contractor's recovery of installment payments, absent a showing of bad faith or failure to exercise honest judgment. 13 Am. Jur. 2d, Building and Construction Contracts, § 37. In the case at bar, the evidence tended to show and the trial court found that plaintiff submitted valid estimates and failure to approve them was an "intentional, arbitrary and capricious delay on the part of Hammond in an effort to delay the payments to Graham for the reason that defendant did not have funds available to pay Graham on said estimates." Defendant contends that plaintiff's remedy was to stop work under a contract provision until payment owed was received. If, as defendant also contends, Hammond's refusal to certify requests for payment was because the project was behind schedule, a work stoppage by the general contractor would only have compounded the problem. We do not read the contract to mean that plaintiff must jeopardize the entire project when defendant wrongfully refuses payment. The trial court's findings, based on plenary evidence, support the award of interest on late payments.

[3]  The trial court also concluded that plaintiff was entitled to recover the cost of additional work not called for in the contracts. Defendant contends that plaintiff failed to request additional sums through written change order as required by the contract. This was not necessary to effect the agreement:

> " 'The provisions of a written contract may be modified or waived by a subsequent parol agreement, or by conduct which naturally and justly leads the other party to believe the provisions of the contract are modified or waived. *Mfg. Co. v. Lefkowitz,* 204 N.C. 449, 168 S.E. 517; *Bixler v. Britton,* 192 N.C. 199, 134 S.E. 488. This principle has been sustained even where the instrument provides for any modification of the contract to be in writing. *Allen v. Bank,* 180 N.C. 608, 105 S.E. 401.' *Whitehurst v. FCX Fruit and Vegetable Service,* 224 N.C. 628, 32 S.E. 2d 34."

*Childress v. Trading Post,* 247 N.C. 150, 154, 100 S.E. 2d 391, 394 (1957) ; *accord, Fishel and Taylor v. Church,* 9 N.C. App. 224, 175 S.E. 2d 785 (1970).

The evidence tended to show and the court found that Hammond instructed plaintiff to do additional work on the disposal plant and to waterproof a wall beyond original specifications. Plaintiff complied. This constituted an oral modification of the contract for which plaintiff was entitled to recover.

[4] With respect to the disputed portions of change order #1, the trial court found that there had been a conditional delivery and ordered that plaintiff recover the amount of cost reductions to which Graham objected. While we agree with the result, we do not believe the facts show a conditional delivery. *See* 2 Stansbury, N. C. Evidence (Brandis rev.) § 257, pp. 253-56. Instead, we think Graham's testimony reveals the existence of a collateral agreement. Parol evidence is competent to establish a contemporaneous oral agreement not inconsistent with a written contract. *Michael v. Foil,* 100 N.C. 178, 6 S.E. 264 (1888) ; *Sherrill v. Hagan,* 92 N.C. 345 (1885). *See Evans v. Freeman,* 142 N.C. 61, 54 S.E. 2d 847 (1906) ; *cf. Hoots v. Calaway,* 282 N.C. 477, 193 S.E. 2d 709 (1973). *See also* 30 Am. Jur. 2d, Evidence, § 1049. When the contract and change order were submitted for Graham's signature, J. R. Graham and the architect Hammond entered into an oral agreement which was ancillary to the original contract. They agreed to a subsequent and future change order which Hammond never executed. This parol modification of the contract is enforceable. *See Childress v. Trading Post, supra; Fishel and Taylor v. Church, supra.* Plaintiff was entitled to recover on the agreement.

[5] Finally, defendant contends that the trial court erred in denying recovery on its counterclaim for roof repairs under plaintiff's two-year contractual guarantee. Plaintiff offered evidence tending to show that when the roof was being constructed the roofing subcontractor pointed out to Hammond that the specifications were defective and the roof would leak if they were followed exactly. Hammond ordered the subcontractor to follow the specifications, and the roof leaked. The court found that any resulting leaks were not caused by faulty construction on the part of the general contractor. The counterclaim therefore was properly rejected.

There is nothing in the record before us to suggest that the construction of Trinity High School was a happy experience for any of the parties concerned. Nevertheless, the trial court found on competent evidence that defendant Board and the architect Hammond were responsible for many of the problems that arose. We are bound by these findings of fact and hold that they support the conclusions of law. The judgment of the trial court is affirmed.

Affirmed.

Judges BRITT and MORRIS concur.